May it please the court, Christopher Johns for the appellant, Mr. Tabatabai. Your Honor, this case involves the question of confidence to represent oneself at trial. And the district judge made the following finding at sentencing regarding my client's confidence to represent himself at trial. Quote, on the question of mental competence, there's no question in the court's mind that the defendant suffers some emotional impediments and difficulties. Whether as a result of life experience or substance abuse is impossible to tell. His frustration and inability to cope with the demands of trial were apparent throughout the trial. He had at times appeared in almost manic state. The more important finding is the finding that the district judge made on point, which was that the district judge was satisfied that any interruption in his medication did not have any impact on his ability to represent himself. That's true, Your Honor, but we're talking in a timeline here. That was in connection with the motion for new trial and the required evidentiary hearing. And the judge found at that time with regard to the issue of depression, because it's a very narrow question. But that is the question. Was he competent to represent himself at trial? She didn't answer that question. Yes, she did. She said she was satisfied that the sporadic injection of medication did not have any impact on his ability to try this case for himself. And that's a quote. That's true, Your Honor. That's exactly what she did say. And that was on the narrow question of medication. But when we go to the global question of his mental illness. But there's no, I mean, the district judges aren't in the business of being global. They're in the business of dealing with discrete issues that are coughed up for them to decide. And what was coughed up for the judge to decide in this case was whether the lack of, intermittent lack of medication affected his, made him depressed even more and had an effect on his ability to represent himself. That's true that there was a decision by the district court with regard to the motion for new trial. She made that decision. That was a factual finding. But she made a subsequent factual finding on his mental state. And that's what she made at sentencing. And she says his frustration and inability to cope with the demands of trial were apparent throughout the trial. But how is that inconsistent with what the other finding that was on point that Judge Reimer quoted? In other words, a person can be frustrated and they can have difficulty coping, and it still might not impact in any material way their ability to represent themselves. Okay? Lots of people have trouble coping with trial. I'm not trying to make light of it. That's fine, Your Honor. Your Honor, one is a narrow question. What the judge found was he was under medication, but he had a history of taking the medication sporadically. And that was his practice before and after trial. So the sole fact that he didn't get these medications really didn't impact his state at that time. His state was what it was. So it's not about the meds you're saying? It's not about the medication. It's about his mental illness. And it's what the Supreme Court said in Indiana v. Edwards. Mental illness is not a unitary concept. But does there have to be, before Indiana v. Edwards applies, should there be a finding as to whether or not the defendant has a severe mental illness? Yes, Your Honor, but it has to be a – it's not – they use the word severe mental illness. But the test is, as in United States v. Ferguson, is whether the defendant has the ability to carry out the basic tasks of presenting his defense without the benefit of counsel. You know, I'm sure all of us have tried a number of cases in which a party has represented himself or herself. And they're not perfect trials. That's true, Your Honor. Non-lawyers typically do erratic things, not because they're incompetent to represent themselves in the incompetent sense, but because they don't really know how to ask questions and they tend to pontificate and give sermons and they tend to get excited. And if you read the transcript of this, as if you were the district judge who presided over this trial, as this judge had done, is amazing in his ability to recall and probe financial transactions from several years before. His conduct could by no means be described as bizarre. It's unusual for a counsel case, but not particularly for a pro se. And that's what the district judge, in effect, was factoring in, isn't it? Your Honor, I think there's a distinction here with regard to someone's intellectual ability and someone's emotional ability. And when we go back to sentencing, what she found, she said that there was no doubt in her mind. When she uses the word mental capacity, there's no question in the judge's mind that he had some problems and that it affected him in trial. She notes his frustration and inability to cope with the demands of trial. That's right out of Ferguson. That's precisely what Ferguson is talking about. Does someone have the ability to carry on the basic tasks of presenting their defense without the assistance of counsel? That's a factual finding by this judge that he did not. That's why there are two separate issues. One is the narrow issue of the medication. The other one is the overall issue, was he able to represent himself? And the Supreme Court said in Indiana v. Edwards, mental illness is not a unitary concept. It affects many people in different ways over periods of time. And in different manners. And that's why we go back to what the test is in the Ferguson case. Could he carry it out? She indicated no. If we go back. Tell me where in the record you're saying she indicated no on that question. It is the excerpt of record, and it would be the first one because it's at first volume. It's at page 46, I mean, where we start the transcript. But the specific one is page 56, lines 4 to 18. The Court went on to say, The Court has evidence of psychotropic medication which has been prescribed for him throughout these proceedings. And under section 353, it is appropriate to take these factors into consideration. And the Court gave a two-level reduction from the guideline because of it, because she had this concern about his illness. Are you talking about the sentencing?  Yes.  Yes, Your Honor. I can get it for you. My time's almost up here. But it's at page. At sentencing, your client made a pitch that he was not culpable because of his mental condition at the time of the crimes, which would have been several years before. And that was the thrust of the expert's analysis that was presented in connection with sentencing. So the question was quite different then. And you would have been faulting the district court now for not having taken into account his depression and other problems at the time of sentencing. That wasn't what was before the Court on the issue of competence to represent himself. Your Honor, the problem here is that there was never presented to the Court in the case of Norhead, Indiana v. Edwards. What was presented was a due process argument that the lack of medications impacted his ability to participate in the proceedings. Yes. It was a narrow question. The broader question. That was a question you framed. Nobody else framed it that way. That's the question. I wasn't a proud lawyer, Your Honor. But in going through the record, I can see that there is the difference between the narrow question on medications, which the Court did address, and the broader question on his mental capacity. Would you like to save the rest of your time? Yeah, I would, Your Honor. Thanks. Ms. Decker. May it please the Court, Eileen Decker on behalf of the United States. The issue presented to this Court essentially is what effect, if any, does the Edwards decision have on this particular case? And the government asserts none. That while the district court did not have the benefit of Edwards, Ferguson, and Thompson in evaluating the situation, the Court did, in effect, what Edwards and Ferguson instruct. It looked very broadly at what impact the sporadic taking of medication had on the defendant, whether or not he had the ability to represent, and evaluating it in hindsight, of course, represent himself at trial. What the Court also had that the courts in Edwards and Ferguson did not have is the benefit of having observed the defendant throughout the trial, a defendant who was very actively engaged in all aspects of his defense. A defendant who filed motions which were not insubstantial, challenging speedy trial, which was a very important issue for him because he wanted to go to trial very quickly, challenging the government on discovery, challenging MDC and giving access to him and his discovery, complaining to the Court about the inability to have access to all of his discovery in a mechanism where he would have access to it and have the time to read through it, motions for reciprocal discovery, requests for transcripts, requests for subpoenas. This was a defendant who was involved in all aspects of his trial and was not shy at any point in his trial in asserting his rights. I do think it's also important to remember this is a very well-educated defendant, a defendant who received a law degree in Iran and a master's in international law in Belgium. While that does not necessarily impact whether he had mental capacity to represent himself, it does give the Court more of the full perspective of this defendant. Judge Cooper, throughout all the pretrial hearings in cautioning him about representing himself, cautioned him repeatedly about this and took into account all of her experiences with him during court. And if I may briefly respond to something mentioned in one of the 28J letters, or a D28 letter, 28J letter filed by the defense, where it indicated the government may have misstated or not provided the full scope of the pretrial hearings and that the defendant, if had given advisory counsel, may have changed his mind, I encourage this Court to look at the pretrial hearings in their totality. The defendant frequently said, well, if I got out of jail or if you gave me bail, maybe I'd give you the continuance you're asking for, Your Honor, or he would qualify it in some ways. But if you look at it in the totality, this defendant was unequivocal in his desire to go to trial and to represent himself. But really, but as you started off by saying, and it's true, that what we're talking about here is trying to figure out whether the district judge did what she didn't realize she had to do based on the law that developed after that. And in the 28J letter, at least one of them that you cited, the Thompson case, in that case, one of the things that the Court relied on was the fact that the district judge made it clear that he wasn't conducting a competency hearing, so that the hearing was more focused on sort of ability to cope and so on and so forth. Is there something in the record here that you can focus on that suggests that this case is more like, this case is more like Thompson and less like Ferguson? Well, I think the similarity to Thompson, Your Honor, is that when the Ninth Circuit was, this Court was reviewing it, the Court said that the Court didn't mush together, in essence, the competency to stand trial and the competency to represent oneself at trial. And I would focus this Court on both the report issued by Dr. Ferguson, where he opined on the defendant's competency to stand trial and separately opined on the defendant's ability to represent himself pro se, and that would be an excerpt of record of 1468 to 1475, and also Judge Cooper's specifically finding, specifically finding on his ability to represent himself pro se. The impact of the defendant sporadically taking medication, which apparently has been his history for months before, during, and after the trial, did not affect his ability to participate in the proceedings, and that is at excerpt 1432. So in that sense, Your Honor, the Court did follow the dictate of Thompson in separating out those two competency evaluations that Edwards suggests. And while the Court is right that really the issue here is what impact Edwards had, the reason I go through a little bit of the pretrial proceedings is that the Court did have the benefit of that end of witnessing this defendant during trial. And if Judge Cooper had any concerns about this defendant and his competency to have represented himself, certainly she would have brought it up. But it's also important to be mindful that he had three attorneys prior to trial, none of whom presented this. He had a paralegal who sat through the trial with him throughout the proceedings, a private investigator that the district court appointed to him, and one attorney post-trial dealing with sentencing issues that was ultimately relieved of duty before Mr. Smith took over. None of those prior counsels brought up this issue of the medication or, more specifically, was he competent to represent himself at trial or to stand trial. But what was his defense? What was the defense he presented? The defense he presented was somewhat twofold, but interrelated. One, that it was the other cooperators who did it, and he had no knowledge. And throughout the trial, he – well, when the witnesses testified, he would say things to the victims, like, well, you never met me, right? You met those other guys. When the cooperators testified, he cross-examined them extensively on the financial transactions, how it was in their names. The businesses and the shell companies were in their names, and they were the masterminds behind it. And he argued it was them and not him, that they were the ones who made all the profit, all of the money, and that the government's financial transaction was skewed against him. That was, in essence, his defense at trial. In summaries, Your Honor, I would request that the defendant not be given the backdoor opportunity to present to this Court what it never presented to the district court, never presented any issue on competency to either stand trial or to represent himself per se. The post-trial motion for new trial was a general attack on the sporadic taking of medication. And while Judge Cooper's inquiry did go into the details of the impact it had on him representing himself per se and his ability to stand trial and did cover the Edwards standard, the defense did not. And for that reason, the government does argue that it is a plain error analysis. But even if the Court were to disagree with that, the government would argue under Edwards and Ferguson, it is a deferential standard of review to the district court. All those courts indicated that the district court is in the best position, given the totality of the situation, to evaluate the defendant. If there are no further questions from the Court. Kagan, I don't think so. Thank you, Ms. Decker. Thank you, Your Honor. Mr. John. I just want to make one point, which I think is important, and it goes to the whole issue here. The focus at the evidentiary hearing, the motion for new trial, was on general competence to stand trial, not to represent himself at trial. But the court-appointed psychiatrist, Dr. Ferenstein, did conclude in his report as follows, and this is at page 1381 of the excerpt of record, Mr. Tabatabai's depression, agitation, and general emotional lability may have impaired his alertness and his effectiveness as his own counsel. So there's the answer there. The court-appointed expert did point to that, but the whole analysis was competence to stand trial, not competence to represent himself. There was just the narrow issue of the medication. Subsequently, in the sentencing, there's other psychiatric reports. All the MDC records are put forth. There's a dearth of psychiatric evidence here, going back to MDC, that shows that he was impacted. And that's what the trial judge noted when she gave the two-point reduction at sentencing. It was more of the global answer to the question, the mental illness, and it did affect him, and she did make that statement. Okay. Thank you, Mr. Johns. Thank you, counsel. The matter just argued will be submitted. Thank you. And next, your argument in Adam Dono.
judges: Kennelly, Rymer, Wardlaw